UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUWAN DEERING,

        Plaintiff,                                      Case No. 22-cv-11809

v.                                                           HON. MARK A. GOLDSMITH

OAKLAND COUNTY et al.,

        Defendants.
_____/

**OPINION & ORDER
(1) REJECTING RECOMMENDATIONS IN MAGISTRATE JUDGE'S REPORT
& RECOMMENDATION (R&R) (Dkt. 49), (2) SUSTAINING DEFENDANT'S
OBJECTIONS TO R&R (Dkt. 51), AND (3) GRANTING DEFENDANT'S
MOTION TO DISMISS (Dkt. 26)**

Before the Court is Magistrate Judge Curtis Ivy Jr.'s report and recommendation (R&R) (Dkt. 49) recommending that the Court deny Defendant Oakland County's motion to dismiss (Dkt. 26). The County filed objections (Dkt. 51), and Plaintiff Juwan Deering filed a response (Dkt. 54). For the reasons that follow, the Court (i) rejects the recommendations in the R&R, (ii) sustains the County's objections, and (iii) grants the County's motion to dismiss.[1]

### I. BACKGROUND

As laid out in the R&R, this case arose out of Deering's arrest in 2000 for allegedly starting a house fire that resulted in the death of five children. See R&R at 2 (citing Compl. ¶ 23–30 (Dkt.

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the filings referenced above, the briefing includes the County's supplemental brief in support of its motion to dismiss (Dkt. 40), Deering's supplemental brief (Dkt. 42), the County's supplemental authority in support of its objections (Dkt. 65), and Deering's response to the County's supplemental authority (Dkt. 66).

1)). He was subsequently convicted of five counts of arson and felony murder and was sentenced to life in prison without parole. Id. (citing Compl. ¶¶ 41–45).

Assisted by the Michigan Innocence Clinic, Deering asked the Oakland County Prosecutor's Office to review the validity of his conviction. Compl. ¶ 46–48. The Oakland County Prosecutor's office opened an investigation into Deering's conviction, ultimately unearthing newly discovered documents related to the credibility of the jailhouse informants and exculpatory evidence that had not been disclosed to the defense in Deering's criminal case. R&R at 2 (citing Compl.). In 2021, Deering and the Oakland County Prosecutor jointly moved to vacate Deering's conviction and sentence. Id. (citing Compl. ¶ 136). The motion was granted, and Deering was released from custody after serving over 15 years. Id. (citing Compl. ¶¶ 137–138, 214).

Deering then filed a claim under Michigan's Wrongful Imprisonment Compensation Act (WICA), Mich. Comp. L. § 691.1751, et seq. against the State of Michigan in the Michigan Court of Claims. See R&R at 2–3 (citing Def. Mot. to Dismiss). Under WICA, which provides statutory damages of $50,000 per year of wrongful imprisonment, Deering was awarded $754,677.91. Def. Suppl. Br. to Mot. to Dismiss at 3.

After judgment was entered in the Court of Claims, Deering filed the instant action, bringing multiple constitutional and 42 U.S.C. § 1983 claims, including Monell claims against Oakland County. See Compl. ¶¶ 198–214. Oakland County has moved to dismiss Deering's claims, arguing that, when he accepted the award under WICA, Deering waived all claims against Oakland County, including all claims brought in federal court, by virtue of express statutory language. See Def. Mot. to Dismiss at 9–11. The provision of WICA the County cites for this argument releases Michigan and its political subdivisions from all claims in state court covering the "same subject matter" as the WICA suit, stating:

2

> The acceptance by the plaintiff of an award under this act, or of a compromise or settlement of the claim, must be in writing and, unless it is procured by fraud, is final and conclusive on the plaintiff, constitutes a complete release of all claims against this state, and is a complete bar to any action in state court by the plaintiff against this state based on the same subject matter. However, the acceptance by the plaintiff of an award under this act, or of a compromise or settlement of the plaintiff's claim, does not operate as a waiver of, or bar to, any action in federal court against an individual alleged to have been involved in the investigation, prosecution, or conviction that gave rise to the wrongful conviction or imprisonment.

Mich. Comp. L. § 691.1755(8). In response, Deering argued that the statute serves only to bar him from asserting claims against the state or its counties in state court, and in the alternative, that WICA is preempted by federal law. See Pl. Suppl. Br. to Mot to Dismiss.

The magistrate judge recommends that the Court deny the County's motion to dismiss. See R&R. In the magistrate judge's view, "[u]nder the plain meaning of WICA," only suits against the state in state court are barred, and Deering's claims against Oakland County should be allowed to proceed in federal court.[2] R&R at 6–8.

The County filed objections, arguing that the magistrate judge erred in finding that Deering did not release all claims against the County—including those he might assert in federal court—when he accepted the WICA award. See Def. Obj. More specifically, the County objects to a perceived inconsistency between (i) the magistrate judge's acknowledgement that Deering's acceptance of the WICA award "constitutes a complete release of all claims against the state" and (ii) the magistrate judge's simultaneous recommendation that Deering nonetheless be allowed to pursue a federal action against a political subdivision of Michigan. Id. at 3–6. It also objects to

---

[2] The magistrate judge and the parties all agree that the statute's reference to "the state" includes counties. As noted in the R&R, WICA defines the "state" as "the state of Michigan and its political subdivisions," a definition consistent with the Michigan Supreme Court's prior holding that "a county is one of the political subdivisions of the state." R&R at 5–6 (citing City of Big Rapids v. Bd. of Supervisors of Mecosta Cnty., 58 N.W. 358, 358 (Mich. 1894)).

3

the magistrate judge's reliance on the second sentence in the relevant WICA provision, which clarifies that the acceptance of an award under WICA does not bar a federal court action against an <u>individual</u> who was involved in the wrongful conviction. <u>Id.</u> at 7–9. Deering filed a response to the objections, agreeing with the magistrate judge's interpretation of the statute and arguing in the alternative that WICA is preempted by federal law. <u>See</u> Pl. Resp. to Obj.

As explained below, the Court sustains the County's objections and grants the County's motion to dismiss.

## II. ANALYSIS[3]

The Court first considers how best to interpret WICA under principles of Michigan law and then considers Deering's argument that WICA has been preempted.

### A. Proper Interpretation of WICA

Federal courts interpreting state statutes "must follow state interpretations of those statutes, and must predict how the state Supreme Court would interpret the statute if it has not yet done so." <u>Bevan & Assocs., LPA, Inc. v. Yost</u>, 929 F.3d 366, 374 (6th Cir. 2019) (punctuation modified). The Michigan Supreme Court has not yet interpreted this provision of WICA, so the Court interprets the statute here according to the principles set forth in Michigan case law. The "primary rule of construction" when interpreting a statute "is to discern and give effect to the [Michigan]

---

[3] The Court reviews de novo any portion of the R&R to which a specific objection has been made. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); <u>Alspaugh v. McConnell</u>, 643 F.3d 162, 166 (6th Cir. 2011) ("Only those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.") (punctuation modified). Absent a specific objection, the issue is waived. <u>Willis v. Sullivan</u>, 931 F.2d 390, 401 (6th Cir. 1991).

To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

4

Legislature's intent." Perkovic v. Zurich Am. Ins. Co., 893 N.W.2d 322, 325 (Mich. 2017). Where a "statute's language is plain and unambiguous, [the Court] assume[s] the Legislature intended its plain meaning" and "enforce[s] the statute as written." Grossman v. Brown, 685 N.W.2d 198, 201 (Mich. 2004). Interpretations that render statutory language superfluous must be avoided so that every word is given effect. See Lake Cumberland Tr., Inc. v. U.S. Envtl. Prot. Agency, 954 F.2d 1218, 1222 (6th Cir. 1992) (explaining that courts should make every effort to give effect to each word in a statute and avoid a construction that renders any provision superfluous). These principles counsel in favor of adopting the County's reading of the statute and finding that WICA releases the County of all claims on the subject matter of Deering's imprisonment.

In parsing the statute, one can discern three distinct legislative pronouncements: (i) "the acceptance . . . of an award . . . constitutes a complete release of all claims against this state . . . "; (ii) "the acceptance of an award . . . is a complete bar to any action in state court by the plaintiff against this state . . ."; and (iii) "the acceptance . . . does not operate as a waiver of, or bar to, any action in federal court against an individual alleged" to be involved in securing the wrongful conviction.

The "plain" meaning of each pronouncement is unambiguous. A "complete release of all claims against this state" means just that—a complete release of all claims against the state. A bar to state court action against the state means just that—no further action against the state in state courts. And the express allowance for federal court actions against individuals involved in the wrongful conviction is unambiguously confined to individuals, not governmental entities.

Deering and the magistrate judge view the first pronouncement as somehow qualified by the second. See R&R at 7–8; Resp. to Obj at 3–5. That is, the bar of state-court actions against the state—without any mention of a bar to federal-court actions—constitutes an implicit limitation

5

on the release language such that actions against the state may be filed in federal court. According to this view, the release language that is unqualified on its face ("all claims") must be construed as limited by the language barring claims against the state in state court. See id.

However, that view runs afoul of the "plain meaning" principle of statutory interpretation. A release of "all claims" cannot mean "some claims." And it runs afoul of the principle requiring that courts give meaning to all words and render no term nugatory or superfluous, because no purpose would be served by the word "all."

Deering's argument might carry more weight if the second pronouncement barring state court actions against the state served no purpose at all unless viewed as limiting the first pronouncement. Under that theory, the second pronouncement might serve to limit the meaning of "all claims" in the first pronouncement. But there is a purpose served by the second pronouncement: it raises the bar for further action against the state to a jurisdictional level. That is, the pronouncement serves to strip Michigan courts of the power to entertain any further actions against the state, while at the same time avoiding an express limitation on federal-court jurisdiction, which would exceed a state legislature's power. Thus, the second pronouncement is far from superfluous and is justified as serving a statutory mission that has nothing to do with limiting the scope of the release embedded in the first pronouncement.

Contrary to Deering's arguments, see Pl. Resp. to Obj. at 6–7, the legislative history of WICA supports the jurisdictional concerns underlying this interpretation. The original language in an earlier draft of the second pronouncement barred "any action" against the state. The final language was limited to a bar against state-court actions. The final language also added the third pronouncement, making clear that federal-court actions against individuals would survive acceptance of an award. The legislative motivation at work is readily apparent: the statute can

define and restrict the jurisdiction of Michigan's courts—hence limiting the prohibition on subsequent actions to state-court litigation—but it cannot restrict the jurisdiction of the federal courts.

It makes sense to infer that the Legislature recognized its inability to curtail federal court jurisdiction. It is hornbook law that states may not limit the jurisdiction of federal courts. See Kontrick v. Ryan, 540 U.S. 443, 444 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction) (citing U.S. Const., Art. III § 1); Williams v. Duke Energy Int'l, Inc., 681 F.3d 788, 798 (6th Cir. 2012) ("It is generally true that the jurisdiction of the federal courts 'cannot be limited or taken away by state statutes.'") (quoting 17A Charles Alan Wright et al., Federal Practice & Procedure § 4211 (3d ed. 2012)). To be sure, states may allow a party to contract for a "release" of both state and federal claims. See Town of Newton v. Rumery, 480 U.S. 386 (1987); Clark v. Abdallah, No. 21-10001, 2023 WL 4851410, at *3 (E.D. Mich. July 28, 2023). But stripping federal courts of jurisdiction is beyond the constitutional pale. The Legislature recognized its limitation by legislating a release of all claims against the state, but it did so without expressly restricting federal-court jurisdiction.

The view urged by Deering and the magistrate judge also cannot be squared with the third pronouncement's express allowance for federal-court claims against individuals. If the Legislature had intended to keep federal court actions alive against the state, it undoubtedly would have expressly said so. After all, it did expressly state that the release did not bar federal-court actions against individuals. If the Legislature had intended to keep alive federal court actions against the state, it would have been manifestly easy to state that no claims are barred from federal court. The third pronouncement's narrower carve-out for allowable claims dooms the view urged by Deering and the magistrate judge.

7

Other judges in this district have ruled consistently with the analysis set out above. In DeJesus v. Harvey, a wrongful imprisonment case brought against Oakland County, the court granted a motion to dismiss brought by the County and upheld the view that WICA released all claims against it. No. 22-cv-12879, 2023 WL 4372682 (E.D. Mich. July 6, 2023). The plaintiffs contended that WICA precluded them only from suing the County in state court. Id. In granting the motion to dismiss, the court read WICA as "precluding a WICA-awarded plaintiff from suing the state or any of its political subdivisions in federal court." Id. at *4. In rejecting the same argument Deering makes here, the court reasoned that the "plaintiffs' suggested construction . . . would render the 'complete release' language meaningless" and that WICA's subsequent "explicit carve out for federal actions against individuals should be understood as limited in conjunction with the much broader complete release and bar of claims against the state." Id. at *3.

In Clark, the court upheld the WICA's release provision in the context of deciding that it was enforceable under the multi-factor analysis set out in Town of Newton, 480 U.S. 386. See 2023 WL 4851410. In finding that the WICA release provision was not contrary to public policy, the court noted that a state statute can authorize a voluntary waiver of a federal claim, but not bar access to a federal court. Id. at *7 ("Perhaps that is why WICA does not specifically state that Plaintiffs cannot sue the state or its entities in federal court; the state would have absolutely no authority to do that. Thus, the Court suggests that WICA's seemingly ambiguous provision may not be ambiguous at all, but intentionally omissive."). This observation supports this Court's reading that WICA was designed to effectuate the release of all claims—federal and state—against the state, but without an express limitation on federal court jurisdiction.[4]

---

[4] Both Deering and the magistrate judge rely on the opinion in Ansari v. Jimenez, 4/4/22 Omnibus Order, No. 2:20-cv-10719 (E.D. Mich.), in which a plaintiff filed Monell claims against the City of Detroit after recovering under WICA. Id. at 1, 4. The City sought cost recovery, asserting that

8

Deering has no meaningful response to any of the arguments in support of the County's reading of WICA. Nor does he have a response to the ultimate question: why would the state of Michigan authorize the WICA program if the millions of dollars paid out under it simply shifted the situs of litigation from state court to federal court? Courts must construe statutes in a reasonable fashion and ascribe a rational basis for legislative enactments. People v. Vasquez, 631 N.W.2d 711, 72 (Mich. 2001) ("Of course, interpreting a statute, we must examine its objective, the harm it is designed to remedy, and we must apply a reasonable construction that best accomplishes its purpose."). The County's view follows that precept—by ascribing to the Legislature an intent to bring closure to all litigation against the state—while the view expressed by Deering and the magistrate judge does not.[5]

**B. Preemption**

Deering argues in the alternative that WICA is preempted by federal law because it immunizes local municipalities that would otherwise be subject to suit under § 1983. Pl. Resp. to Obj. at 8–15. Clark directly addressed this question, holding that WICA is not preempted. 2023

---

claims brought against it in federal court were frivolous, as the plaintiff's acceptance of an award under WICA barred his suit. Id. at 4. The court found that the City was not entitled to costs, reasoning that "[n]othing in [the statute's] plain text prevents Plaintiff from suing the City in federal court for claims based on his wrongful conviction" and finding that plaintiff's reading of the statute was "not frivolous." Id. (emphasis in the original). Because the finding in Ansari was solely that the plaintiff's reading was "not frivolous," and not that the plaintiff had a right to sue the City in federal court, the opinion provides scant support for the view urged by Deering and the magistrate judge.

[5] One other argument raised by Deering concerns in pari materia. See Pl. Resp. to Obj. at 5–6. This principle of statutory construction serves "to carry into effect the purpose of the legislature as found in harmonious statutes on a subject," Apsey v. Mem'l Hosp., 730 N.W.2d 695, 700 n.4 (Mich. 2007). But Deering has not identified any "harmonious statutes" with which to compare WICA. To the extent Deering meant to argue that the various pronouncements within WICA must be read harmoniously, the analysis above demonstrates that the County's reading satisfies that standard, in contrast to Deering's interpretation.

WL 4851410, at *7–8. In so finding, the court relied on Leaman v. Ohio Dep't of Mental Retardation & Dev. Disabilities, 825 F.2d 946 (6th Cir. 1987). Leaman affirmed a district court's dismissal of a federal action against state employees based on an Ohio statute providing for a "complete waiver of any cause of action, based on the same act or omission, which the filing party has against any state officer or employee" once that filing party has already brought suit against the state under the Ohio Court of Claims Act. Id. at 948 (citing Ohio Rev. Code § 2743.02(A)(1)). In holding that the statute was not preempted, the United States Court of Appeals for the Sixth Circuit emphasized that, rather than "deprive claimants of their federal forum," "[t]he Ohio statute simply offers to make available an otherwise unavailable deep-pocket defendant, and an alternative forum" to plaintiffs who choose to waive later suits. Leaman, 852 F.2d at 953. WICA works in the same way. "WICA does not force any claimant to accept the government's statutory offer"; it merely provides the option. Clark, 2023 WL 4851410, at *7.

### III. CONCLUSION

For the reasons explained above, the Court (i) rejects the recommendations in the R&R, (ii) sustains the County's objections, and (iii) grants the County's motion to dismiss.

SO ORDERED.

Dated: September 7, 2023　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan　　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge